The next case this morning is 19-1624 Tristan Squeri et al. v. Mount Ida College et al. Mr. Garrick. Good morning. If I may reserve five minutes for a vote? Yes. Thank you. This court's jurisprudence is clear. Even under Iqbal, Rule 8 is still a notice pleading standard. The claim in this case not only did it plead all the prim, fashy elements of each cause of action, but it also... Counsel, can I advise you to move on from your Iqbal argument and get to the merits of your various state law claims? Okay, so... You've adequately briefed it. It's the other issues that are of more concern. Okay, so if I may, I'll start with the breach of privacy cause of action. Please. In this case, this is a situation where we had pled in the complaint that the disclosure of student records to the University of Massachusetts of Dartmouth violated the student's rights. This included dissemination of private financial documents, documents about assets, documents about income, things like that, academic records, all of which would have been protected under federal law under this IRFA. Are you saying that each individual student would have had to have said, it's okay to send my records to UMass Dartmouth in order to get me into a new institution? That this was an individual right which was violated? They couldn't do this in an institutional way in order to, as they saw it, protect their students? So typically what will happen, Judge Dahl, is that you have a situation where someone would consent to the release of their information. That's what FERPA, the federal law, requires. In this situation... So your answer is yes, each student had to consent individually? Yes or no, just to answer the question, please. Yes, for their information to be released to UMass Dartmouth, it would have had to have been disclosed, consented to individually. Here's why that's important. Under the succession plan, that wasn't entered into when the school closed. No, the succession plan only took place after regulators got involved and they were criticized for not having a succession plan. But under the succession plan, the school of interest, the successor institution, was not the University of Massachusetts at Dartmouth. It was the University of Massachusetts at Amherst. Why are those different? Well, if you ask any student that attends University of Massachusetts at Dartmouth... No, no, I don't know. Sure, they have different baseball teams, maybe. But why aren't they part of... Isn't University of Massachusetts at Dartmouth part of the University of Massachusetts system? It's part of the system, Your Honor. But frankly, this is a factual issue. This is an issue that needs to be resolved. Well, it's not a factual issue as to whether it's the entity that they're negotiating with, is it? The entity that they were negotiating with was University of Massachusetts at Amherst. And what happened here, we've put this in the complaint, that the deal was they used the student's information as an incentive. We'll provide you with all of these students to go to UMass Dartmouth, but that wasn't the school of record. That wasn't the school that was... But isn't that a different argument from the argument you're making that it was a breach of the student's privacy? Even if they had sent it directly to UMass Amherst, you may be making the same argument here, wouldn't you? No. Why not? Because under mass law, there's a requirement that academic records be transitioned to a new successor institution. Not only were academic records transitioned to University of Dartmouth, but also their financial aid information, because it was designed to entice these students to provide some sort of marketing effort to these students. So I think your answer means that if we were to deem UMass Dartmouth and UMass Amherst part of the same entity, then your argument fails on privacy. Well, that's what the court found below. Well, I'm sorry, that's not what the court found below. The court below confused the two. If you were to make the finding that they were the same... I'm asking a simple question here. If we find that University of Dartmouth is not materially different than the University of Amherst, the University of Massachusetts at Amherst, then your privacy argument fails, given that you said they could give it to UMass Amherst. Correct, but I don't know how this court can make that finding on an undeveloped record without discovery, without hearing it. As a matter of law, we could. Well, there's no law. Would you like to move on to your next argument? The second argument has to do with breach of contract. Under breach of contract, this is a situation where Mount Ida itself concedes that the relationship between student and college is contractual in nature. So, we pledged that there was... So, what did they promise the students? They would finish their semester. They did. They would get their degrees if they had graduated. They did. So, what didn't they give them? Ongoing education, is that your only real complaint? Well, again, Your Honor, that goes to how the facts determine what those contracts were. In the complaint, we had pled that there were contracts that gave the student the opportunity to work towards a degree. Now, there are situations where that might not happen after a particular semester, but this idea that all they were bargaining for was a semester worth of education, that didn't come into play until the defendants made that argument in their motions. But ruling on a 12B-6 under this court's de novo review, you don't even get to know it. You've got to look at how we pled it in the complaint. Well, that's not... Because when you say a contract, we look at the contract, and we just don't accept the conclusion. And so, we're looking through the record. There's certainly no written contract that says what you say. So, what you're asking us is to say that the student-college relationship with a four-year institution implies this term. Well, two things. First, we're asking this court to look at the implied contract, as you said, but also, there are written materials which were not pled, but they were referenced and they were alluded to and were allowed to have those inferences. Things like, for example, the student handbook, enrollment agreements... Actually, you can't say that the student handbook gives me a right to ice cream every Wednesday and then keep us from looking at the student handbook under 1286. It just doesn't work that way. No, but when we plead that there is a contract, we're allowed those inferences of what's actually true. Counsel, you seem to keep missing the point, which is that many of these matters are matters of law, and you keep responding in terms of facts. So, now, let's go back to your contract claim. Judge Stahl asked you the two basic questions that most people would understand to be the nature of the contractual relationship, and your response was, there was an implied promise that you could work toward a decree. But they did. They worked toward the decree that they got during the time they were there. So, what else do you have? Well, I think what this Court needs to realize is that by shuttering the school, it's not just a matter of shutting off... Well, you had a class, you're done, you can move on. There's also problems inherent with the closure that reduce the value of what was bargained for. For example, if I earn a 4.0 GPA at Mount Ida College, and then the college closes and I go somewhere else, my GPA would reset. And that has issues as far as honors, as far as internships, as far as clerkships. These are all items of value that... All of those are true, regardless of whether there's a breach of contract, regardless of whether there is some duty to warn students that the school may have some financial problems. So, how is that a breach of contract? Because if I'm contracting with Mount Ida College for those benefits, and for no fault of my own... You're going back to the implicit four years of education. Not necessarily, Your Honor. I'm going towards this... If I work towards a degree and I decide to voluntarily transfer, I know that I can take the value that I've earned already. Well, that didn't happen across the board here. I'll give the court an example. George O'Day, one of the plaintiffs, the named plaintiffs in this case, he enrolled in a four-year Bachelor of Science program in Mortuary Science. In Mortuary Science, there are very few, if any, four-year bachelor's programs in the country, let alone the Commonwealth of Massachusetts. When the college closed, they said to him, we'll arrange for a two-year associate's degree program, not the four-year program that you decided that you wanted to come. So they've taken that away from him. Your contract argument has this difficulty of it. If you want us to say that there's an implied term that you'll provide, they'll provide four years of education, i.e. won't close, then it would follow that any college that closes for whatever reason has breached its contract because contracts are strict liability, you have promised. It doesn't fit your claim here. I don't think your claim, as I read it, is that the breach was closing. As I understand it, a school might have to close. Your complaint is that they should have let people know much sooner in advance and made it more possible for the students to protect themselves from the harm of the closing. That's what I understand you. And it doesn't fit your contract claim. It fits more one of your other claims, potentially. Correct. It would go more to the fraud, fraud the inducement causes of action and the breach of contract. For fraud, though, you need some statement sort of that they made, which I'm not... How do we address this one? This became an issue of much notoriety in Massachusetts, so much so that the legislature turned its attention to what to do. And the legislature looked at the issue of you're sort of between a rock and a hard place when you're on a board of trustees of a college. If you say you might close, that becomes self-fulfilling, and then you end up closing even though you wouldn't have had to. But if you don't say you're going to close, then the students are left holding the bag if you do. So which do you do? It looks like the Massachusetts legislature came up with a solution, which is if you think you may close, you have to tell the Board of Higher Education, and then they have certain criteria for deciding whether you hit a trigger or not. Why should we, if the legislature has done that, why should we come up with some new common law way of doing it? We're not asking for you to come up with a new common law other than we're asking for the extension of law in the fiduciary duty respect. But what we're asking you is to say, look, they have the right. If they decide they want to close, if they can't handle their finances, they have the right to close. We're asking that they tell us so that we have the right to. So how does one board serve two different fiduciary duties? One is to the institution that's established by statute. You're saying, oh, it goes beyond that. There is a fiduciary duty to the students, to the teachers, to the workers, right? You put in amicus briefs to that effect. How can a fiduciary owe obligations to different groups whose interests are not coincident and indeed are varying? We're asking this court to follow. It's an extension of Massachusetts law. Well, again, what we're asking for is that the school has a duty to inform the Board of Higher Education. Not under the regs at the time, very badly written regs, and the legislature has altered the language. And the way I read the new legislation, it imposes more duties on the Board of Higher Ed, which apparently was asleep at the switch throughout all of this period. Respectfully, Your Honor, I believe that Section 2.073F was in existence when the closure occurred. There were some modifications. They were asked to include this information on their website so it was a little bit more transparent. But when the timeout had it closed, these regulations were in existence. And I had ignored them. They did not tell us. They knew going back years before that they were in financial disarray. They knew in February of 2018. Judge Coyote just addressed that question to you. Stay with that one, because unlike your contracting, your fiduciary duty, you've got here, as I understand it, under Section 2.073F, they actually did have a duty to tell someone something under certain circumstances. That was a duty to tell the Board. Now, explain to us how we get from that to saying the violation of that duty, which you allege, is actionable by the students. I just want to be clear. We're not saying that the violation of the Board's regulations in and of itself is what we're seeking to address here. What we're saying is there was fraud, and we knew there was fraud because there weren't disclosures. They didn't even bother to make disclosures to the State, which they were required to do. So they knew the information. They had a duty to tell someone so that these students could be protected. But now you've lost me because you said you're not alleging the violation of the regulation as a basis for the claim, but you're then saying they had a duty to tell someone. Where did that duty come from, if not from the regulation? Well, it may have come from the regulation, but what we're saying is Well, if that's the source of the duty then, then how does a violation under the regulation become actionable by someone other than the Board or the State? Because what we're saying is that the fraud cause of action is predicated on this idea that there should have been disclosure. Now, the duty to disclose comes in a number of ways, but we're not saying we're suing you for a violation of this regulation. Okay, stay with the regulation. Suppose they had disclosed it to the Board. That alone wouldn't have helped any of the students. It would only have helped the students if the Board, upon that disclosure, then did something that notified the students. Correct. And in addition to that, though, we're relying on the fact that had they made disclosures, the students would have acted. And we know that the students would have acted because Carmen re-sent her testimony to the Board that they would have acted. Can I go back to the reg? If the institution knows that it may close, or if it is planning to merge with another institution, it shall notify the Board and should follow appropriate procedures, knows that it may close. As Judge Chaotet just pointed out to you, it was not in the interest of the institution for the Board of Trustees to announce, gosh, we may close. It depends on the outcome of our merger discussions. If they are successful, then the institution continues. If they are not successful, then it doesn't. How is it that the institution where the fiduciaries have an obligation to try to keep it going knows that it may close? Again, they knew earlier that they were in merger discussions. But I think the problem that we have is... Or if it's planning to merge. Very much so. Engage in discussions you think, as a matter of law, meets the knows that it may close or planning to merge. Not necessarily, Your Honor. However, I would say on a 12B6 motion on an undeveloped record, it's incumbent both on the district court and on this court to allow all those facts to be determined. Okay, so you've conceded that those regs do not provide a private cause of action. Correct, under the regs. That doesn't mean that we don't have the right under the other common law causes of action that we file to pursue action. But we don't have standing to enforce the Board regulations. I will concede that, absolutely. And as Judge Kayada pointed out to you, the duty that is owed there is owed, even assuming that it was triggered, it is owed to the Board of Higher Ed. The Board and the public? No, not the public. Not until the Board requires it to take certain actions. Well, at that moment, the duty is to disclose to the Board. However, there is still a duty to have some obligation. And you spin that into a duty to notify the students. Because under Massachusetts law, if an institution has a position of trust or confidence with, in this case, the students, then as a matter of fact and law, a duty can be found as a matter of fact and of law. And so this court must reverse so that we can determine whether, as a matter of fact, there is that position of trust and confidence that would lead to a fiduciary duty. You seem to argue that there was no notice. Audit financial statements, I believe, were filed and publicly available every year, which showed that this institution was running at a deficit. Is that not correct? That is not correct, Your Honor. Audit reports were filed and created. Where they were, who they were filed with, who they were given to, how they are available. I found several online. But only because this became an issue. No, no, no. They were filed before this became an issue. They were publicly available. No, I mean, you were able to find it because you knew that there was something that needed to be looked into. This isn't something that was, you know, these are records that, by the way, were not included in the complaint, should never have been considered. They're not a matter of public record. They may be publicly available, but they're not from a governmental agency. Well, your basic point is that for factual purpose, they're not on the college website. They're not a place that any reasonable student is going to go look. And not only that, the Attorney General, when she issued her scathing report about the conduct of minority engagement, she determined that they didn't even list the appropriate financial risk comments that would typically accompany something to suggest that there was a risk of failure. You're suing the trustees. Were not these on Mount Ida's own website, the financial records? Not to my knowledge. And certainly it wasn't pled in the complaint that they were. So if this is something that we're relying on because it showed up on their motion to dismiss, that's not before the court. No, but the regulatory agencies had this data for several years. Again, we don't know who, because it wasn't the Board of Higher Ed that had this. This was NESAC, which is an accrediting agency, not necessarily a governmental agency. Again, these are facts that... But NESAC is there only because a government agency regulations direct that the required public filings may be made with an authorized accreditation. And the accrediting agencies are there for a good reason. It doesn't necessarily mean that the records that are submitted to NESAC are now records that would be extraneous matters that should be considered on a motion to dismiss, especially given that you're asking the students to interpret complex financial records with information the Attorney General found was missing and is something that a certain student would have to go search for, while at the same time, if you look at it in the context of all the other statements that they're receiving, the school is doing great, we're a top 30 educational facility, those materials shouldn't be considered. We should consider what students actually pled in the complaint. Okay, you have reserved some time. Thank you. Thank you. Your Honors, may it please the Court, I'm Jeremy Sternberg of Holland and Knight, and I'll be arguing on behalf of Mount Ida College, its Board of Trustees, former Board Chair, Carmen Reese, former Dean of Admissions, Jeff Cutting, and former Provost, Ron Aiken. The District Court correctly dismissed with prejudice all of the appellant's claims in the First Amendment complaint, and we urge this Court to affirm its entirety. At the core of the appellant's argument, as the Court engaged in debate with Mr. Garrick, is that Mount Ida failed to disclose to each of them its financial distress that led to its closure. But as the District Court correctly found, the flaw that infects that whole case is that the only legal duty that Mount Ida had was completely fulfilled each and every year, and that legal duty was by statute to file with the Attorney General's Office its audited financial statement. Wasn't there a duty to file with the Board of Higher Education? Let's assume that I read the complaint as plausibly alleging that Mount Ida knew, at least by the fall of the year prior to its closure, that it may close. Then didn't it have a duty to so notify the Board of Higher Education? It certainly did not at that time under the regulations that existed, Your Honor. That Greg didn't say, if you know you may close, you should notify PHA? If you know you may close. Yes, and I'm saying that the complaint plausibly alleges that they knew they may close. They didn't know they were going to close, but they knew they may close. They're trying to sell off their real estate to survive? Well, I don't think that plausibly alleges that they knew they may close. In fact, they had tried to sell off real estate in previous years. They had been operating. Well, they're having an operating deficit that is pretty... Let's just... All right. I'll mark you down as saying they didn't know they may close, and it's clear. But for the purpose of this argument, just assume for a moment that a judge could read the complaint as plausibly alleging that in the fall, they knew not that they were going to close, but that they may close. If they knew they may close, then wouldn't you agree they had a duty to so notify the BAG? I would not agree. If they knew they may close, I still don't think under the regs in effect... Well, the reg says, if you know you may close, you shall notify the BAG. So explain to me how you... If you know you may close, you don't notify the BAG. If there was a... If the complaint is plausibly alleged that, then they may have had that obligation. Doesn't create... They had that obligation. Maybe this is why the college didn't tell students. It read the regs like you do. No. If the regs are as you ask, then the college had that obligation. It creates no private right of action. So let's stay with that. If the college had an obligation to notify the BAG, and it didn't do that, and if we were to find that this was a horrible way to manage going out of business that seemed to not protect the students, then why wouldn't the common law recognize that that combination creates a cause of action? I think it's for some of the reasons that you were discussing in the prior argument. Knowing that you may close is a very fuzzy concept. The clear obligations here, and I want to correct some of... make sure the record's clear on what the real legal obligation was and how it was conveyed to the students and the public, was to file at the Attorney General's office audited financial statements. That was scrupulously done each year. Those were publicly available on the Attorney General's website. They were also available on the school's website, and that's part of the record in our briefs. There's also some reference to the... Part of the record in your briefs, this is a 12D6 motion. How do we find on the 12D6 motion that back in that time period there was published on the websites the audited financials? We've provided the links, Your Honor, and we've also, part of the record, as the district court correctly found it, and as we've put in the record appendix, are the actual audited financials that were publicly available on the Attorney General's website. But the Attorney General's a public record. How is the college website a public record that we can take notice of what was filed on it two years ago? Well, it is publicly available. It was available to the students. It was available to anyone who would log into or go into the Mount Ida College website. But I think even more important, the NEASC information you were previously discussing, that NEASC information is specifically included in the plaintiff's complaint. So for the appellants now to say that shouldn't be considered really twists the law of what a court can and should appropriately consider at the 12D6 stage. They've included quotes from it in their first amended complaint, and therefore the district court properly considered all that information, and obviously this court should too. Sure, that they refer to, but you're talking about the college website, not the NEASC website. Correct, three different things. There's a difference between the two. I could imagine a student checking the college website. I don't know any student who even knows the NEASC website to check. Do the Attorney General or the Board of Higher Ed regs encourage colleges to put this financial information on their websites? So at the time, I think that was very much on a school by school basis. I'm not sure what the regulation said about it at the time. There is now the Board of Higher Education in circumstances that seems appropriate will communicate under the new implementing regulations of the new statute. But at the time, I think it was on a more ad hoc basis, but certainly Mount Ida had that information there, and I think more importantly, it was publicly available on the Attorney General's website. So the only legal duty that existed was strictly followed. And I think in recognition... There was a separate legal duty, the statutory fiduciary duty to the institution on the part of the Board of Trustees. Well, the Board of Trustees certainly had fiduciary duties to the institution. That's right. But no fiduciary duties to the students. In fact, in recognition of that, the students are asking this court to legislate a new state law creating a new fiduciary duty. And that is inappropriate for a number of reasons, including that this court typically doesn't legislate. And because the Massachusetts legislature just in November of last year did legislate, as the court was discussing, there is a new law called an Act to Support Financial Stability in Higher Education that does not create the fiduciary duties that the appellants are looking for, does not create the individual liability that they're looking for. And in the last 10 days or so, the Board of Higher Education issued its implementing regulations. So I think similar to a case this court was confronted with in October of last year, Doe versus Boston College, in which it was also asked to legislate a new state law. And as you, Judge Lynch, wrote, a litigant who chooses federal court over state court cannot expect this court to blaze new and unprecedented jurisprudential trails as to state law. And the court said that particularly in the area of education, a field in which this court should defer to state judgments, it should especially defer in those situations. Again, we're here in the field of education and this court should similarly defer in this case. So the plaintiff has asked us to ask the SJC what it would do. Yes, I think it's plain what the SJC would do. It would decline the question. There's a nearly 100-year-long line of cases from Massachusetts courts saying that the relationship between adult students and their colleges and universities is contractual in nature, not fiduciary. And now we know within the last five months the legislature has acted. In the last two weeks, the regulators have issued implementing regulations. There's no vacuum and there's clear authority from the courts and from the legislature on how that question would be resolved. So the 11th hour certification request we submit should be rejected because we can be very confident what the answer would be. Well, I'm not sure, but it seems to me that what they're saying is that there is an obligation beyond simply finishing the semester, getting people through the semester, getting people graduated who have completed their course of study, that there's a broader contract right which says that a student who is in the college not having finished his degree, not having gotten to the graduate status, has a unilateral contract, contractual right with the college to have the college there for four years. The student doesn't have to be there for four years. He or she can make a decision to transfer or to drop out to do any number of things. But isn't that their basic argument? I think that's what they like, but that construct is a completely impossible one. It creates a unilateral impossible contract. The student is promised four years and a degree in his or her choice of study. No college could ever close, and if the student decided he or she wanted to transfer, then the student's free to go, but apparently, under their view, the student wouldn't still be obligated for the tuition to, in this case, Mount Ida. It's a contract without any terms, let alone reasonable terms. Yes, I understand that's what they may have liked. That would be utopian in a sense, but that's not a contract that's alleged. It's not a contract that's possible. It's a contract that would even violate the statute of frauds, among other problems. Not so in writing. Correct. I see my time is waning, and I do want to address one argument that the plaintiffs raised in their reply that I want to make sure we have a chance to address. In their reply brief, for the first time, they attach and discuss an attorney general's letter from March 13th of 2019. The date is important. That is a date when the district court proceeding was still underway. Not only did they know about it, we know they know about it because on April 4th, 2019, they submitted a surreply in the district court proceeding, and in a footnote, referred to that letter. They didn't choose to use it as a basis for filing a Rule 15 motion to amend. They didn't tell the district court, oh, there's this letter, and it has information in it that we think adds to the mix of information that might make out a plausible complaint. They didn't do any of that. They didn't refer to it in their initial brief in front of this court. Instead, again, 11th hour, they put it in their reply brief and say, look at all these horrible things that the attorney general says we should be allowed to amend. They never made a proper Rule 15 amendment. They robbed the district court and the parties of any ability to test whether their claims are futile, which they are. And the headline to that attorney general's letter is that the attorney general, the one with exclusive authority to investigate claims of financial mismanagement by statute, declined, after investigation, to do any enforcement. The rest of the letter is informational direction to the legislature and the regulators on things they should consider when they did regulate and they did legislate. Thank you. Thank you, Your Honors. Thank you. Proceed, please. Thank you. May it please the Court, Elizabeth O'Lean, on behalf of Apelli Berry-Brown, the former president of Mount Ida College. In addition to all the reasons just explained by Mr. Sternberg, this Court should also uphold the district court's complete dismissal of the first amended complaint for at least four reasons. Appellants abandoned all arguments that the district court erred in dismissing every claim alleged against President Brown individually, as well as the other individuals, by failing to raise any such arguments in their opening brief. The Court should uphold the complete dismissal of all claims against President Brown as well, because the first amended complaint does not allege any facts that President Brown acted in bad faith, for personal gain, with ill intent, or any other facts that could overcome the presumption that President Brown performed his duties in good faith, in the best interests of Mount Ida, and with such care as an ordinarily prudent person in his position. Doesn't it allege, true or not, that he made statements that were deceptive because they were only partially true regarding transactions? None of the statements attributed to President Brown are actionable because the first amended complaint does not allege that any of those statements were false. Additionally, the emails and the quoted portions... Well, how about the top 30 institution? So that is not an incorrect statement. So that statement is not false. An institution that's within a month of going out of business is a top 30 institution? My understanding is that that ranking refers to the status of the students and the academic programs that were available. Additionally, that is a forward-looking statement. The email says that the school would continue to remain a top 30 school. So that is a future prediction which is not actionable. But suppose he knew then the school was going out of business. Then forward-going or not, it was a false statement that it will remain a top 30 school. At that point, they did not know because at that point, that statement was made in the... I'm sorry. Yes, that statement was made in the March email. And the March email was to announce that the merger discussions with LaSalle College had concluded. Had failed. Had failed. And they closed when? How long after that? So it was after that that they entered into the discussions with the University of Massachusetts and that announcement was made on April 6th. So within a month of saying we will remain a top 30 institution, they effectively announced they're going out of business. But that particular statement itself is not false. The school was a top 30 institution. I thought you said it will remain a top 30 institution. Let me pull the fact quotation. The actual state... So that is what is alleged in the first amended complaint. The actual statement in the email is that all of these gains have caused the national ratings of the institution to rise among the top 30 in the North region as reported in the U.S. News and World Rankings. So that is a factual statement. Although the first amended complaint does allege that it says they would remain there, that's not actually what the email says. But we don't try the facts now, do we? No, but this email is directly referenced in the first amended complaint. So even though it was not attached, it is incorporated and we provided it. It is in the record. Additionally, the group pled allegations in the first amended complaint also fail to allege that President Brown is individually liable because it is entirely implausible and impossible that all of the group defendants could have acted in the same manner. The group defendants include Mount Ida, which is an entity, as well as a voting member of the Board and non-voting members of the Board like President Brown. Thank you. Ms. Kaplan. Thank you. May it please the Court, dismissal of all claims against my client, Mr. Jason Potts, should be affirmed regardless of this Court's conclusions with respect to the claims against Mount Ida College or any of the other individual appellees. The first amended complaint fails entirely to plead factual content that allows the Court to draw a reasonable inference that Mr. Potts is liable for any of the misconduct alleged in this matter. With respect to Mr. Potts, the first amended complaint includes only one paragraph, paragraph 16, in which he is identified and in which a brief summary of his presumed duties as Chief Financial Officer and Treasurer are alleged. Otherwise, just once is Mr. Potts even indirectly referenced, where it is alleged in paragraph 32 that the CFO and others made representations that were similar to President Brown's top 30 statement that was just discussed. Otherwise, there is literally nothing in the complaint with the exception of the group pleadings. There is no contractual fiduciary or confidential relationship alleged, nor any legal duty against Mr. Potts, nor do the appellants seek to reach my client by piercing the corporate veil with respect to any alleged contract. It is well established that collective reference to all defendants is insufficient to provide the particularized allegations required to allege personal participation by an individual. Liability in this matter cannot lie merely due to the position formerly held by Mr. Potts at Mount Ida College. The group allegations contained in the first amended complaint simply did not state any claim against my client for which relief can be granted. The appeal with respect to Mr. Potts is frivolous and an unreasonable waste of litigation costs and this Court's resources. Motions for determination of a frivolous appeal under Rule 38 have been filed by a number of the individual appellees, including Mr. Potts, and in view of the appellant's failure to properly allege any claims against Mr. Potts, my client is entitled to an award of just damages and double costs pursuant to Rule 38. Thank you. Before I conclude, I just want to clear up a couple of factual issues that were raised on some of the other arguments. With regards to the NESAC reports, we didn't cite all of the NESAC reports in our complaint. The only thing that we cited in the complaint was reference to the self-study. They took that as an opportunity to provide to the Court much more than just the self-study, things that we didn't even know about. And I want to let the Court know what's in those NESAC self-study reports that is so wrong here. In those reports, they talk about how they are financially stable, how they are compliant with their obligations, and that they are achieving a break-even operating budget. That's what we cited in the complaint. From that, they springboard that in to say, well, here's everything else that we provided to NESAC. That's not before the Court shouldn't be considered, and those facts are disputed. As to the conversation that Judge Gallardo had with Counsel for President Brown, I just want to clarify the time frame. We're not talking about a month between him informing the students and then the school closing. It was two weeks. So to suggest in a two-week period of time that they knew that everything was hunky-dory to all of a sudden having a comprehensive deal in place with the University of Massachusetts, that's hard to believe, but you don't have to believe it because that's what was pled in the complaint and we're entitled to that. Her opening argument was that you have waived the issue by not briefing it in your initial appellate brief. The, well, respectfully, this Court reviewed the sufficiency of the brief. Did you brief it in your initial brief? The... Yes or no? I'm trying to think. I'm not sure if we discussed that particular time frame. No, no. The claims, the individual claims against the individual defendants. Well, under the Court's rules... Yes or no? I think the answer would be yes because under the Court's rules we're required to use descriptive titles. We use Mount Ida which would reference certain defendants. Okay. We're not asking for a lot here. All we're asking for is just a chance to develop the record to prove to a court of law that what Mount Ida did was egregious and unlawful. The attorney general who had the same tools that we would use if we had discovery, interview of witnesses, looking at documents, she concluded that they breached fiduciary obligations, that they violated Chapter 93A, and that not only did they know that they had the tools to protect the students, that they dug their heads in the sand. And they did that to their own benefit. They funded their own pension funds. They paid their salaries. They set aside a legal budget for well-versed and highly capable counsel. They took care of everybody except for the students. We plead in the complaint facts that support the exact findings that the attorney general made. We're entitled to those inferences by law. We ask that you remand this matter to the administrators accountable for what they did to these students. Without further questions, we rest on the brief. Thank you very much. Thank you. Well argued on